Marcus G. Christ, J.
The defendant, David Torr, has legal title to a 5%-acre parcel of land in the village of Upper Brook-ville. It now. has two single-family dwelling houses on it, one occupied by Torr and the other occupied by the defendant, Louis Sheid. The village claims that such occupancy violates the Building Zone Ordinance in two respects. In the first cause of action the village claims the defendants are causing and permitting two single-family dwellings to be used and maintained on the 5%-acre parcel owned by Torr thereby violating section 5.0 of the Building Zone Ordinance which the plaintiff asserts allows only one single-family detached principal dwelling on a single parcel held in one ownership. In the second cause of action the village claims the defendants are using and occupying the premises and the buildings thereon without any certificate of occupancy having been issued as required by section 10.5 of the Building Zone Ordinance. The plaintiff seeks injunctive relief restraining the defendants from violating the ordinance in the respects just mentioned. As originally commenced this action was against the defendants Torr and Sheid. Subsequently, however, a third defendant, Pat Hannett, was permitted to intervene, and he has interposed an answer which contains a cross complaint against the defendant Torr in which Hannett seeks specific performance of an agreement between himself and Torr covering the sale of a 2-acre portion of Torr’s 5%-acre parcel and certain buildings which were moved and relocated on the 2-acre portion. In the alternative, if specific performance cannot be decreed, Hannett seeks a judgment for money damages sufficient to make him whole for the money he has spent on the 2-acre parcel and the buildings which were relocated on it.
The evidence upon the trial establishes the following essential facts. The defendant Torr employed the defendant Hannett to do certain work for him. Subsequently, in March, 1955, as a means of making payment to Hannett on account of the work done Torr agreed to sell to Hannett 2 acres of his 5%-acre tract together with the dwelling house and a combination stable and garage which Hannett was to move to and rebuild on the 2-acre parcel. After the written agreement was executed but before title closed, Hannett moved the two buildings to the 2-acre parcel and expended a considerable sum of money both *727 in moving such buildings and in repairing and remodeling them. In addition, Hannett permitted the defendant Sheid and his family to go into possession of the relocated dwelling house where Sheid and his family now reside under an agreement with the defendant Hannett. The defendant Torr has been unable to conclude a satisfactory arrangement with the bank which holds a first mortgage covering the entire 5%-acre tract for a release of the 2-acre parcel which he contracted to convey to the defendant Hannett. The result is that legal title to the entire 5%-aere tract still remains in the defendant Torr. In February, 1956 Torr applied to the building inspector for two certificates of occupancy. One of these was to cover his own dwelling house and garage and the other related to the dwelling-house and combination stable and garage which had been moved to the new location on the 2-acre parcel under contract of sale with Hannetfi Following an inspection of both premises the building inspector notified Torr on March 7, 1956 that his inspection had revealed both dwelling houses occupied and that such occupancy was a violation of the Building Zone Ordinance because no certificates of occupancy had been issued. The building inspector stated further that the permit which had been issued for the moving of the buildings had been for an accessory building use and that no other use would be permitted. Torr was notified to remove all violations of the zoning ordinance by March 19, 1956 under penalty of facing appropriate injunction proceedings. The violations not having been cured as demanded the village commenced this action within a short time afterwards.
The claim of the village that the defendants have violated the provisions of the Building Zone Ordinance by using or permitting the use of the buildings on Torr’s land without certificates of occupancy having been issued is established by the evidence in this case which shows that no certificate of occupancy has ever been issued for either the dwelling now occupied by Torr or the other one occupied by Sheid. However, the failure to issue certificates of occupancy results, in the main, from the position taken by the village that the occupancy of two single-family dwelling houses on the 5%-a ere tract owned by Torr constitutes a violation of the ordinance. In essence, the village’s position means that irrespective of size a parcel of real property in a residence A-l District title to which is in a single owner may not have more than one single-family detached principal dwelling. With this construction of the ordinance the court cannot agree.
*728 Under familiar rules of construction the court is obliged to give to the ordinance a construction which does not render its application invalid if such a construction can reasonably be found from its language. It is likewise the court’s duty to sustain the constitutionality of the ordinance if that can be done without doing violence to the interests of those affected by the application of the ordinance and without ascribing unwarranted meaning to the language employed. A definition of terms as used in the ordinance is important in resolving the issue presented to the court. Definitions of such terms as ‘ ‘ principal building”, “ accessory building ”, “ single-family dwelling” and “lot” are contained in section 2.0 of article 2 of the ordinance. A “ principal building ” is defined as “ a building designed to be used as the main dwelling house or building on the lot ’ ’. An ‘‘ accessory building ’ ’ is defined as “ a building such as a private garage, private swimming pool and appurtenant bath house, private toolhouse or children’s play house, private tennis house, private riding ring or private stable, or a non-commercial greenhouse which is subordinate and accessory to the principal building on the same lot and which is used for purposes customarily incidental to those of the principal building The term “single-family dwelling” is defined as “ a building designed for and occupied exclusively as a home or residence for not more than one family, a family being one housekeeping unit ”. The term “ lot ” is defined as “ a parcel or plot of land occupied or designed to be occupied by one principal building and its accessory buildings, if any, including such yards or open spaces as are arranged or designed to be used in connection with such buildings, the area of such lot to be measured to the street line only ’ ’.
The foregoing definitions must be kept in mind when other provisions of the ordinance having to do with permissible uses of property and the area requirements pertaining to such uses are examined. Section 5.0 of the ordinance provides that in a residence A-l District the following uses are permitted: (a) single-family detached principal dwelling; (b) uses or buildings customarily incidental or accessory to the uses specifically permitted in a residence A-l District and located on the same lot, such as farming, beekeeping, nursery, dairying, poultry, breeding of dogs, game, birds, horses and livestock and horticulture plus a few other limited uses not necessary to mention for the purpose of this opinion. The area, frontage, height and setback requirements applicable to a residence A-l District are set forth in article TV" of the ordinance. Section 4.0 provides, *729 in substance, that subject to the exceptions specified in section 8.1 which are not material here “ no building shall hereafter be erected, altered or enlarged in any district except on a lot which for each principal building, together with its accessory buildings ” has an area of at least 2 acres and the building area shall not exceed 15% of the lot area. The section contains other provisions relating to height, setback and width which are not pertinent to the present discussion.
It was conceded upon the trial that the dwelling house occupied by Sheid was being used as a principal building and not as an accessory building. The evidence also establishes that the building occupied by Sheid is a ‘ ‘ single-family dwelling ” as that term is defined in the ordinance. It was also admitted by the building inspector that the dwelling house occupied by the Sheid family is far enough away from the dwelling house occupied by Torr so that Torr’s entire 5%-acre tract could be subdivided and have both buildings comply with the area and setback requirements of the ordinance. It is to be noted that in specifying the area requirements in a residence A-l District the language of section 4.0 is that no building shall hereafter be erécted, altered or enlarged ‘ ‘ except on a lot which for each principal building, together with its accessory buildings * * * has an area of a least 2 acres ”. (Italics supplied.) By the very language of section 4.0 of the ordinance it can be seen that the situation has been envisaged in which there would be a “ lot ” sufficiently large to have erected and maintained thereon more than one principal building. On such a “ lot ” more than one single-family detached principal dwelling would be permissible provided it had an area of at least four acres and the building area did not exceed 15% of the lot area and it otherwise complied with the frontage, height and setback requirements specified in article IV. It is the court’s view that this is the fair intendment of the language employed in this portion of the ordinance. However, it might be argued that the definition of the word “ lot ” previously quoted herein is in conflict with the view that the ordinance contemplates more than one principal building on a lot. In order to give that language a construction which would prohibit more than one principal building on any lot regardless of its size it would be necessary to say that once a dwelling house has been erected the status of the parcel of land becomes fixed and no other building designed to be used as a main dwelling may be erected on any portion of that parcel. Such a construction can only be arrived at by disregarding the plain language of section 4-0 *730 already quoted and discussed and by disregarding, as well, other language of the ordinance which the court believes indicates no such restrictive intent as the village ascribes to the ordinance. Section 8.2 of the ordinance bears the title ‘‘ Reducing Area of Improved Lots ’ ’ and provides as follows:
“No building shall be used or maintained on a lot which is hereafter reduced in area, or length of front line frontage in violation of the following provisions :
“ (a) No improved lot shall be reduced in area or in any dimension unless the lot so reduced has at least the area prescribed in Section 4.0 of this ordinance and has the unoccupied spaces required by the other provisions of this ordinance.
“ (b) No improved lot shall be reduced in length of front lot line frontage unless the lot as so reduced has at least the length of front lot line frontage prescribed in Section 4.0 of this ordinance.
“(c) No improved lot shall be reduced in area or in any dimension unless the setback of each then existing building from any new boundary line shall be at least the setback which would be required by the other provisions of this ordinance for a building of the same kind then newly erected in the same location.”
It is clear from the provisions of section 8.2 that the term “lot ” does not have the narrow meaning which the village would give it. It is likewise clear that the ordinance itself has made express provisions for reducing the original area of a single lot and carefully prescribed the conditions under which a subdivision may be carried out by specifying the limitations which will control in respect of dimensions, area, frontage and setback. Particularly significant is the use of the phrase “ the setback of each then existing building from any new boundary line ” in subdivision (c) of the section (italics supplied).
In the court’s opinion the village’s position is untenable not only because the language of the ordinance does not warrant such a construction but because to give it that construction would compel this court to find invalid so much of the ordinance as prohibited more than one building regardless of the size of the plot. A review of the legal concepts which support the exercise of the zoning power is unnecessary whether we refer to the enabling act (Village Law, §§ 175, 177) or to the language which appears in the first paragraph following the title of the ordinance under consideration. The ultimate purpose of zoning-regulations is to promote the health, safety, morals and general welfare of the community. In Nectow v. City of Cambridge (277 U. S. 183, 188) the court said: “ The governmental power *731 to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.”
The issue in this case is not the validity of two-acre zoning. It has been determined that reasonable density zoning regulations such as that involved in specifying a minimum area of two acres are a proper exercise of the zoning power (Dilliard v. Village of North Hills, 276 App. Div. 969). Zoning regulations which have their justification in the prevention of overcrowding ' of land, the avoidance of undue concentration of population, the reduction of congestion in highways or prevention of fire hazards and other dangers, bear a substantial relation to public health, safety, morals or general welfare. When similar regulations are made to depend upon the legal ownership of the real property, these regulations no longer can be said to possess that same substantial relationship which is necessary for their validity. Followed to its logical conclusion the interpretation which the village seeks to place upon its ordinance would prohibit a property owner from erecting more than one single-family detached principal dwelling on a plot comprising 50 acres. No such consequence can be permitted to flow from the application of zoning regulations.
The court finds that the plaintiff is entitled to judgment on its second cause of action by reason of the defendants using and occupying the dwelling houses without having obtained certificates of occupancy. However, it is clear that the failure to obtain the certificates of occupancy has in a large measure been due to what this court has now determined to have been an erroneous interpretation of the ordinance by the building inspector. Therefore, while the plaintiff is entitled to judgment for the injunctive relief it seeks, such relief will be stayed for a period of 90 days after service of a copy of the judgment to be entered hereon with notice of entry, to enable the defendants to make the necessary adjustments involved in complying with the ordinance and qualifying for the issuance of certificates of occupancy. The defendants are entitled to judgment dismissing the plaintiff’s first cause of action.
With respect to the cross complaint of the defendant Hannett against the defendant Torr the court finds that Hannett has established his claim by a fair preponderance of the evidence and is therefore entitled to judgment decreeing specific performance of the agreement to convey the two-acre parcel and the buildings relocated thereon. In the event, however, that the *732 defendant Torr is unable to convey title to such parcel free and clear of encumbrances then the defendant Hannett is entitled to judgment against the defendant Torr in the sum of $24,915.50, together with costs and disbursements. Except as hereinbefore specifically provided for, no costs are awarded.
Settle judgment on notice.